1                    UITED STATES JUDICIAL PANEL

2                                ON

3                      MULTIDISTRICT LITIGATION

4      IN RE:

5      BODY SCIENCE, LLC              DOCKET NO. 2375

6      PATENT LITIGATION

7                          -   -   -   -

8                     TRANSCRIPT OF ORAL ARGUMENT

9                          -   -   -   -

10     APPEARANCES:

11     For Plaintiff:        Allan J. Sternstein
                             Dykema, Gossett
12

13

14     For Defendant         Alan Grimaldi
       Phillips:             Mayer, Brown
15

16     For Defendant         Kimberly Donovan
       A&D                   GCA Law Partners
17

18

19     Court Reporter:       Judith Gage
                             (216) 357-7238
20

21

22

23

24     Proceedings recorded stenographically
       Transcript produced by computer-aided transcription
25

1                    THURSDAY, JULY 26, 2012, 11:25 AM

2

3                    JUDGE HEYBURN:  Next is the Body Science

4    patent litigation.  This is 2375.

5                    Mr. Sternstein, you are reserving a minute?

6                    MR. STERNSTEIN:  Yes.  Good morning, Your

7    Honor.  I would like to address first some of the

8    matters that have occurred since the briefing, and

9    second to make a correction in a quote in our brief,

10   and then, as time permits, go into some of the key

11   points supporting centralization.

12                   First, since the briefing has occurred, there

13   has been some minimal discovery in most of the cases,

14   and two of the cases have progressed to at least giving

15   infringement contentions.  On the infringement

16   contentions that were made, these are preliminary

17   contentions, one against LifeWatch, one against

18   Phillips.  All of the claims that were asserted against

19   LifeWatch were also asserted against Phillips.

20   Phillips had then some additional independent claims

21   that were -- excuse me -- dependent claims that were

22   asserted.

23                   All of the independent claims were asserted

24   against both patents, and I can advise the panel that

25   all the independent claims are also going to be being

1    asserted against the other parties.

2              In addition to that, Phillips has moved the

3    patent office for reexamination.  It is an ex parte

4    reexamination, so that arguments raised that are lost

5    in the patent office could be raised again at court.

6    The fact that there is this reexamination is another

7    need for coordination, to accommodate the ^ post-grant

8    review that additional accommodation was noted in the

9    In Re Maxim Integrated Products patent litigation case,

10   which some of you were on the panel.

11             Phillips has also moved for a stay in its

12   litigation pending the reexamination.  In my certainly

13   unbiased opinion, that was premature to say the least.

14   The patent office has not ruled on or accepted the

15   reexamination at this stage.  They have not taken any

16   action in the reexamination, and clearly the Court has

17   not at this stage granted any stay.  What the Court may

18   or may not do under these circumstances I think is

19   totally speculative.

20             With regard to the -- as far as all of the

21   cases, although some discovery has occurred as far as

22   document requests and interrogatories, no depositions

23   have been taken in any case.

24             JUDGE BARBADORO:  Your opponents all argue,

25   and this is a common argument in these patent cases,

1    that centralization is unwarranted because the

2    allegedly infringing products are so very different and

3    individualized and that much of the litigation will

4    focus on those individual differences when it comes to

5    infringement, and that outweighs any advantages to be

6    achieved by common claim construction and common

7    litigation over invalidity issues.

8              What is your response to that?

9              MR. STERNSTEIN:  Well, first of all, going to

10   the claim construction issue, I agree with the comments

11   in the prior panel, that I think it is appropriate to

12   have all these arguments before the same judge to begin

13   with, including whatever the patent office may be

14   doing.

15             But with regard to the allegations of the

16   very many different products, I would say in this case

17   that is not a meritorious argument for several reasons.

18   First of all, although the products may have different

19   purposes, it is pointed out in one of the briefs that

20   one is for humans, one product, and one is for horses.

21   The underlying product is still the same.  Every

22   product that is in here has some kind of sensor that is

23   attached to the body.  Every product that is accused of

24   infringement has some kind of evaluation station that

25   is separate from the sensor, and then there is wireless

1    communication between the two.  That is in all the

2    products, and that's really what the patent is all

3    about.

4          JUDGE BARBADORO:  If these cases survive

5    motion practice, they obviously would be remanded to

6    the districts where they were filed for trial

7    initially, correct?

8          MR. STERNSTEIN:  Correct.

9          JUDGE BARBADORO:  If there are these

10   individualized issues as to infringement, would it be

11   an option for the transferee court to conclude that

12   remand might be appropriate for summary judgment with

13   respect to individualized issues of infringement, much

14   in the way that, say, in a product liability MDL, where

15   there are individualized issues of causation, those

16   issues could be addressed ultimately by the transferee

17   court on remand?  Is that something that would work

18   here?

19         MR. STERNSTEIN:  I think it would work to

20   have that summary judgment on infringement by the other

21   courts.  The thing that is so common amongst all the

22   other issues here is clearly all the validity issues

23   are going to be in common -- invalidity or validity

24   arguments are going to be the same.  All the prior art

25   is going to be looking at the same.  So much of the

1  patent, the commercial success of the patent is going

2  to be the same in all of them.

3  　　　　To the extent, and I would say a lot of even

4  the infringement allegations are going to be the same

5  because they are all going to deal with the same

6  wireless protocols, with some minor variations here or

7  there.

8  　　　　If those details that someone says might be

9  providing some noninfringement argument, that could be

10  done by the other court.  That is feasible.  But my

11  understanding, Your Honor, and my looking at the

12  products, the issues that people are going to allege as

13  being noninfringing will be the same between all the

14  different defendants.

15  　　　　JUDGE FURGESON:  Let me ask a question.

16  Judge Castillo had a case with the joinder of some

17  parties.  He found the defendants were improperly

18  joined, the acts of infringement were unrelated, and

19  the parties had little connection to Illinois.  He

20  further declined the request to consolidate any severed

21  actions from him for purposes of joint discovery and

22  *Markman* hearing, finding that, quote, "consolidation

23  will not promote judicial economy or efficiency," close

24  quote.  He is a very bright judge who actually has

25  taken an early look at this with sort of the facts on

1    the table.

2           How much weight should we give to Judge

3    Castillo's view that consolidation or centralization

4    will not promote judicial economy or efficiency?

5           MR. STERNSTEIN:  Well, I think several

6    matters, Your Honor.  First of all, aside from the fact

7    that I think he was wrong, in looking into the

8    substance of it, it is no different, for example, and

9    some of you were on the panel, and you had this Epogen

10   and Aranesp case occurring in 2008, where in effect the

11   same thing happened, where you had a number of cases,

12   five cases in California, the Judge there sent them all

13   out to different places, and they all came back to the

14   same judge.  And again, it was there, too, for

15   convenience of the parties and what not was the

16   original separation.

17          I can tell you there is a tie to Illinois,

18   and part of why it was filed in Illinois, and it will

19   be common to all of the cases, that tie to Illinois is

20   Motorola.  Motorola was very instrumental in the

21   background of these patents.  When Motorola decided it

22   wanted to get into the wireless medical field, it found

23   these patents and decided it needed these patents to

24   get into the field.  You have all the people that were

25   involved with Motorola at the time when they acquired

1    the patent all residing in Illinois.  That's where this

2    thing was originally brought, in Illinois.  In the

3    prior litigation, Motorola was even a party for that.

4          JUDGE FURGESON:  Do we have more before us

5    than Judge Castillo did?  In other words, he may not

6    have had as many of the facts or as much of the

7    information that we have before us?  Is that what may

8    have led him to reach his conclusion?

9          MR. STERNSTEIN:  Correct, and it is a

10   different standard as well.

11         JUDGE BARBADORO:  Couldn't you make an

12   argument that misjoinder is a different issue from

13   centralization, because ultimately joinder is

14   ordinarily for everything through the resolution of all

15   issues, whereas centralization is a limited subset of

16   issues.

17         MR. STERNSTEIN:  Absolutely.  And before

18   Judge Castillo was the issue of consolidation, not the

19   issue of coordination or centralization.

20         JUDGE FURGESON:  I may have understood this.

21   I understood that he was requested to keep the cases

22   before him for purposes of joint discovery and *Markman*

23   only.  Is that incorrect?

24         MR. STERNSTEIN:  Correct, under Rule 42.  We

25   did make that request.

 1              JUDGE FURGESON:  And his response was it

 2     won't promote judicial economy?

 3              MR. STERNSTEIN:  That was his response under

 4     the -- as he saw it, with which we would disagree, and

 5     we listed all the commonalities which we do feel exist

 6     here.

 7              JUDGE HEYBURN:  Thank you very much.  You

 8     have reserved a minute, Mr. Grimaldi.

 9              MR. GRIMALDI:  Good morning.  Alan Grimaldi

10     representing Phillips and the other defendants here,

11     A & D Engineering, LifeWatch, Polar Electro and Boston

12     Scientific counsel here.  A & D has reserved some time.

13              JUDGE HEYBURN:  I'm sure we would like your

14     perspective on that same issue, the Illinois case.

15              MR. GRIMALDI:  Absolutely, Your Honor.  Judge

16     Barbadoro, I think you asked the right question here.

17     We think the common issues here are overwhelmed by the

18     individual issues relating to infringement.  There are

19     60 to 70 different products amongst these five

20     defendants, accused of infringing two patents with 153

21     claims.

22              Phillips is headquartered in Massachusetts.

23     It is accused of infringing -- 15 of its products are

24     accused of infringing the two patents.  Portable x-ray

25     scanners, ultrasound, fetal monitors, monitors that are

1    wired with sensors.  Boston Scientific, its main

2    product is made in Minnesota, implanted cardiac defibs;

3    A & D, a small company in California with a parent in

4    Japan, only has three or four products:  Scales, some

5    blood pressure monitors.  LifeWatch in Illinois makes

6    cardiac monitors that are attached to patients.  Polar

7    makes horse, equine monitors to, when they are

8    exercising, to deal with their measurement of

9    heartbeat.

10              JUDGE RENDELL:  But isn't it like saying

11   there is Ford and Oldsmobile and Chrysler, but if an

12   issue has to do with an engine switch, does it really

13   matter that there are lots of different end products if

14   it is the sensor mechanism is what's at issue here?

15   Isn't it the sensor mechanism and the wireless piece

16   that's the issue?

17              MR. GRIMALDI:  That is not the only piece at

18   issue.  This is not like a single drug or camera or

19   hand set.  These are very, very diverse products.

20              Counsel for the plaintiff says that the

21   bluetooth protocols present common issues of

22   infringement here.  We have told them three times that

23   none of Phillips' accused products use bluetooth.

24   LifeWatch has one bluetooth product.  There are one out

25   of 31 Polar products that use a bluetooth.

1          Judge Castillo looked at this and said

2     bluetooth does not present a common issue.  In fact,

3     there are four bluetooth standards, so infringement is

4     fragmented here.  We are still going to need five

5     different experts to deal with noninfringement, and

6     putting 60 different issues before one judge we don't

7     think promotes efficiency.  We think it slows down the

8     case.

9          I want to correct plaintiff's counsel.

10    Nothing happened in the A & D and Polar case.  Nothing.

11    In the Boston Scientific they just started some Rule 26

12    proceedings.  In the Phillips case, some discovery has

13    been served, some contentions have been filed, but we

14    have filed for reexam.  The LifeWatch case before Judge

15    Castillo has proceeded a lot faster.  There is a lot

16    more discovery, third party discovery contentions that

17    have been filed, so we don't think that -- we believe

18    that these issues dealing with all of these diverse

19    products will not create the efficiencies that 1407 are

20    intended to accomplish.

21         Now, the defendants have talked and we have

22    agreed that one defendant will take the lead in

23    plaintiff's discovery, one defendant will take the lead

24    in discovery with respect to the inventors; that there

25    are joint experts that we may have on invalidity so

1    there are some efficiencies that we can bring to the

2    table ourselves, and Judge Ferguson, you asked the

3    question about Judge Castillo.  He said that keeping

4    the cases was improper, and he was going to transfer

5    them.

6         They did ask him to consolidate for certain

7    pretrial purposes, which in my mind is like

8    centralization, and he said it would not promote

9    judicial economy.  He said that the similarities in

10   these products are so abstract that it is just like

11   saying all these products infringe these patents.

12        So I think this is a little like the

13   ArrivalStar case, where there was such a disparity

14   amongst the defendants and their products that to adopt

15   common issues on claim terms and others really would

16   decrease efficiency.

17        Point 2.  This Court has recognized that it

18   will take into consideration centralization when it

19   appears it will further the interests of counsel more

20   than it would further the interests of the statute.

21        The plaintiffs filed this case in Chicago.

22   The plaintiffs are a Texas corporation.  The first

23   hearing, Judge Castillo said, "Why are you here?"  They

24   responded it had to be filed someplace.  Plaintiffs'

25   counsel are there.  They could have asked Judge

1    Castillo to transfer this case to Judge Bucklo.  They

2    didn't.  They asked him to consolidate as a fallback

3    position.  He said no.

4           Now having lost on those issues they are

5    asking this court to reverse Judge Castillo, not only

6    to send it to Chicago, but to send it to a different

7    judge.  They had their opportunity and they lost.  We

8    don't --

9           JUDGE BARBADORO:  What is your take on this

10   argument, the suggestion that perhaps claim

11   construction, when you have multiple diverse

12   perspectives with different motivations by defendants

13   to produce shadings of claim construction, that you get

14   more -- you may get more reliable decision making if

15   you have one judge hearing everybody's proposed

16   constructions rather than having multiple judges each

17   only hearing the view of that particular defendant who

18   has crafted their claim, proposed claim construction to

19   address that particular problem in their case and

20   result in a judgment of noninfringement as to that?

21          MR. GRIMALDI:  Judge, in general, that's

22   probably a proposition that we can all agree with, but

23   in looking at the facts of the case you have A & D here

24   with three products, a small company, claims that are

25   going -- there are going to be fewer claims asserted

 1   against them.  They are going to be dragged into this

 2   whole process.

 3           I don't see that all of these claims are

 4   going to be asserted against all the products in the

 5   same way.  There are a lot of dependent claims that are

 6   going to be asserted against some defendants and not

 7   others.  We're not going to be able to agree on claim

 8   term interpretation, and I don't see the efficiencies

 9   there.

10           Point 3, if the panel believes that

11   centralization is warranted, all the defendants have

12   agreed that Massachusetts is the preferred forum.

13   Boston Scientific and Phillips, the two main

14   defendants, are headquartered up there.  Polar is close

15   by in New York.  A & D has consented; LifeWatch says it

16   would rather be -- it has consented to Massachusetts,

17   it would rather be in Illinois, and it would rather be

18   before Judge Castillo, who is in the patent pilot

19   program, who hasn't had an MDL case in three years, and

20   Judge Bucklo just got a patent case assigned by this

21   panel.  Thank you.

22           JUDGE HEYBURN:  Thank you very much.

23   Ms. Donovan.

24           MS. DONOVAN:  Kimberly Donovan for A & D

25   engineering.  Adding a couple words beyond what

1    Mr. Grimaldi said that is specific to A & D

2    Engineering, A & D is a very small company.  They have

3    53 employees.  Most all of them are located in

4    San Jose, California.  They do have three very simple

5    products accused in this case:  A blood pressure

6    monitor, a scale, and an activity monitor.

7          You heard the types of products that were

8    being addressed by Mr. Grimaldi.  Those are far more

9    complex products.  We don't have any contentions out so

10   far, but over 100 claims were accused against the party

11   that has contentions.  We anticipate we will have very

12   few claims against A & D.

13         JUDGE FURGESON:  Are there some other parties

14   in this case like you, smaller companies?

15         MS. DONOVAN:  Polar is also a small company,

16   the company that makes the monitors, such as the equine

17   monitors.

18         JUDGE FURGESON:  You know, sometimes we can

19   sever out people that don't seem to fit, or for some

20   reason don't fit well.  You have a bunch of giant

21   companies and you have a very small set of companies.

22   No matter what, you don't want to be part of this case?

23         MS. DONOVAN:  No matter what, we don't want

24   to be part of this case.  Obviously patent litigation

25   is very, very difficult for small companies, as the

16

 1   panel pointed out, but it is even harder when it is

 2   centralized in a case when they have huge corporations

 3   like this, when the products that are at issue and the

 4   claims that are likely to be at issue are very few.

 5           JUDGE BARBADORO:  Can't you achieve some

 6   efficiencies by relying on the giants to do the

 7   invalidity challenges and focusing on those aspects of

 8   the case that are specific to your client?  Isn't that

 9   a way for a small company in a way to save?

10           MS. DONOVAN:  Undoubtedly we will try to do

11   everything we can along these lines, but we do

12   anticipate the issues of significance to us, because

13   our products are very simple products and we anticipate

14   very few claims will be at issue, so in some ways we

15   will able to do that and in other ways we won't.  In

16   fact, what I would anticipate is that we will in some

17   ways get overwhelmed by the larger companies who just

18   -- to our company, this is very important.  And there

19   are very few claims that are critical to us and there

20   are very few terms that are critical to us.  When it

21   comes to us having to choose ten terms, it would be

22   difficult.

23           JUDGE BARBADORO:  You won't get the attention

24   your particular issue should have.

25           MS. DONOVAN:  Exactly.

1          JUDGE FURGESON:  And I was impressed, as I

2     always am, when lawyers get up and say they are

3     cooperating.  I think that is an indication of good

4     lawyering, professionalism, just good stuff.

5          Would that help you, the fact that all the

6     lawyers are cooperating?  Would that make the pain

7     easer to deal with?

8          MS. DONOVAN:  It certainly does help the

9     pain, there is no doubt, but the fact is that if this

10    case -- if it is centralized, we do think it will

11    greatly increase our pain over having the case not

12    centralized.

13         JUDGE BREYER:  I actually don't understand

14    the argument.  I understand conceptually the argument

15    about getting swallowed up, but you say look, we have

16    one or two terms that are extremely important to us.

17    Why wouldn't you say that to the Judge, and why

18    wouldn't the Judge be in a position to recognize of ten

19    terms, one of them better be the term that is of

20    concern to you?  I don't know why -- why that is some

21    insurmountable problem.

22         MS. DONOVAN:  Well, with over 153 claims

23    involved here, and some of the defendants are likely to

24    have over 100 claims asserted against them, if we are

25    in our own separate case, I anticipate that in the

```
 1    Northern District, where we are presently pending, we
 2    would be able to have, say, ten terms to be --
 3                JUDGE BREYER:  How far has your case gone?
 4                MS. DONOVAN:  It has not progressed at all.
 5    We have no schedule, no discovery.
 6                JUDGE BREYER:  And you are going to get a new
 7    judge?
 8                MS. DONOVAN:  Actually, right now, we are
 9    before Judge Ware, and we anticipate we will be
10    transferred to a new judge, reassigned to a new judge,
11    so we have not progressed at this point.  But if we
12    were in the case, some judges -- it really depends on
13    how the judge manages his docket, as the panel has
14    already recognized, but at least for some judges,
15    regardless of the size of the case, they do strictly
16    limit the number of claims to be construed and they ask
17    the defendants to work it out among themselves, and I'm
18    happy that everybody is working well together, but
19    there is no doubt when somebody has, you know, 25
20    products involving millions and millions of dollars,
21    that they are probably going to want to have more than
22    four of those terms, and so that's going to leave very
23    few terms for a small company.
24                JUDGE BARBADORO:  Couldn't on remand, if the
25    case survives motion practice and you are unable to get
```

1    out of the case, before the case is tried, if you have

2    some unresolved claim-specific construction questions

3    that are specific to your client, do you think that the

4    transferor judge would deny you the opportunity to have

5    construction on those?

6            Ultimately, he or she would have to instruct

7    the jury at the trial, and I would assume would have to

8    end up construing the terms, wouldn't they?

9            MS. DONOVAN:  We thought that at times.  It

10   really depends on the way the judge handles, manages

11   the cases.  Obviously, patent cases present a lot of

12   challenges to judges and how they manage their docket.

13           JUDGE FURGESON:  The good news is they are

14   suggesting Judge Gorton, who I think is a good judge, a

15   nice guy, and I'm sure he would listen to an advocate

16   as accomplished as you.  So I would just give you that

17   peace, if I could, if you do get engulfed in all this.

18           MS. DONOVAN:  Well, thank you very much, Your

19   Honor.

20           I would add that, as was already mentioned,

21   for us, whether we are in Chicago or in Massachusetts,

22   it is -- it doesn't matter to us.  Since it does seem

23   to be more convenient to the majority of defendants and

24   there is more connection to Massachusetts, then we

25   would agree to that.

1           JUDGE RENDELL:  Can I ask a question?  There

2      are five cases pending, one of you in California, one

3      against Polar.  You say the two are small.  Are you

4      saying that if the case is centralized it should be

5      only the three cases, and not the other two?

6           MS. DONOVAN:  Well, all the defendants are

7      opposed to centralization.  Each of them have different

8      reasons.  A large part of it, as was already mentioned,

9      the diversity of products --

10           JUDGE RENDELL:  I know if we were to

11      centralize at all, you are saying you would want to

12      stay out of it?

13           It seems then you would not only have to be

14      in your own case, but you would essentially have to

15      monitor the other case as well, which would be double

16      duty, don't you think?

17           MS. DONOVAN:  In a way that is certainly

18      true.

19           JUDGE RENDELL:   Thank you.

20           JUDGE HEYBURN:  Thank you very much.

21      Rebuttal.  A minute.

22           MR. STERNSTEIN:  Your Honor, I would first

23      emphasize that as, Judge Rendell mentioned, I think the

24      issue here with all the products is you are talking

25      about a common feature in all of these different

1    products.

2              JUDGE FURGESON:  As Judge Rendell mentioned,

3    we understand that part of the argument.

4              What about the little guys in this case?  You

5    have the giant guys and the little guys.  You want to

6    keep them all in?

7              MR. STERNSTEIN:  I would like to keep them

8    all in.  In all due respect, I would think A & D would

9    want to be in on this aspect, for some of the reasons

10   that have been stated, because they are part of the --

11   they could let the work be done by bigger guys.  So I

12   think it makes sense even for the little guy, and

13   provides efficiencies for them to be in here.  So I

14   would note that, and I would also note that as far as

15   the comment that Mr. Grimaldi made as far as the

16   associate saying at the hearing, "Why are we here," and

17   saying that it could have been anywhere; that was a

18   hearing on a disqualification motion.  It had nothing

19   to do with what the Judge was asking, and the

20   associate, if you read the transcript, said he wasn't

21   aware of this, and there was an offhand remark when the

22   Judge was saying, "I suppose it could have been filed

23   anywhere."

24              So it wasn't a conscious decision of yes, we

25   didn't have any reason for filing it.  There is a big

1    reason.  I'm saying, as I mentioned before, Motorola is

2    a very big reason for having it in Illinois.

3            JUDGE BARBADORO:  Isn't there a reason

4    defendants might not want centralization, because if

5    they don't centralize and there is an adverse ruling on

6    invalidity, it is not binding on them, but if they --

7    if one of the other parties knocks out a patent on

8    invalidity ground, they benefit from it.

9            MR. STERNSTEIN:  Sure.

10           JUDGE BARBADORO:  If they get an advantageous

11   claim construction they can rely it; if they don't get

12   one, they get a second shot at it, so this gives them

13   the flexibility to take advantage of adverse rulings

14   without prejudicing their right to a second bite at the

15   apple if they don't like what happens.

16           MR. STERNSTEIN:  Absolutely.  The way it is

17   set up now, they have five bites of the apple, and six

18   if you include the patent office.

19           JUDGE HEYBURN:  Thank you very much.  We'll

20   take it under submission.

21           (Proceedings adjourned at 11:51 AM.)

22                         - - - -

23

24

25

1                    C E R T I F I C A T E

2


3          I, Judith A. Gage, Federal Official Court
Reporter, certify that the foregoing is a correct
4  transcript from the record of proceedings in the above
entitled matter.

5

6

7  _____

8  July 30, 2012

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25